UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,                              <u>COMPLAINT</u>

                Plaintiff,                    Civil Action No.   6:20-CV-0109 (DNH/ATB)
                                                CV-

       - against -

MIRSAD SKILJAN a/k/a
MIRSAD M. SKILJAN

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

        The United States of America alleges that:

1.    Jurisdiction is conferred upon this Court pursuant to Title 28, United States Code, Section 1345.

2.    On information and belief, the Defendant resides within the Northern District of New York at 1000 Rutger Street, Utica, Oneida County, NY 13501.

3.    This lawsuit is filed to enforce an instrument for the payment of money, to recover a sum certain balance due the Plaintiff.

<u>FACTS</u>

4.    That on or about May 24, 2013, with authorization from the U.S. Small Business Administration, lender M & T Bank entered into a Term Note (hereinafter "Note") and Loan Agreement (hereinafter "Agreement") with the Defendant for the sum of $46,000.00.

5.    A Term Note and Loan Agreement are attached herein and incorporated by reference as <u>Exhibit A.</u>

6.     A copy of the SBA loan authorization is attached herein and incorporated by reference as Exhibit B.

7.     The U.S. Small Business Administration guaranteed 50% of the loan.

8.     The Note and Agreement have not been otherwise amended or modified.

9.     The Defendant defaulted under the terms of the Note for failure to make payment due on April 24th, 2014 ("the default").

10.    The Plaintiff is entitled to recover the balance due under the Agreement and Note, plus accrued interest and fees, as itemized in the Certificate of Indebtedness issued by the United States Department of Treasury Bureau of Fiscal Service, acting on behalf of the U.S. Small Business Administration, attached and incorporated herein by reference as Exhibit C.

11.    As a result of aforesaid default the Defendant is liable to the Plaintiff for the sum certain balance set forth in the Certificate of Indebtedness plus additional interest accruing at the rate of 6.50% per annum from October 31, 2019 to the date of judgment entry. Exhibit C.

12.    Plaintiff is not seeking attorneys' fees.

13.    No part of the aforesaid sum has paid, although duly demanded.

        WHEREFORE, the United States demands judgment against defendant as follows:

        1.     For the sum of $32,965.12 plus pre-judgment interest at the rate of 6.50% per annum as itemized in the Certificate of Indebtedness accruing from October 31, 2019 through the date of judgment entry;

        2.     Post-judgment interest, pursuant to 28 U.S.C. ' 1961 at the legal rate then in effect, from the date of entry of judgment until the judgment is paid in full;

3.      Such other relief as this Court may deem just and proper.


Dated:  New York, New York
        February 2, 2020

                Respectfully submitted,

                        BY: */s/ John S. Manfredi*
                        John S. Manfredi
                        ATTORNEY FOR THE UNITED STATES OF
                        AMERICA
                        Manfredi Law Group, PLLC
                        302 East 19th St. Suite 2A
                        New York, New York 10003
                        PH: 347 614 7006
                        Fax 347 332 1740

Case No.: 6:20-CV-0109 (DNH/ATB)


Exhibit A



# TERM NOTE

May _24th_, 2013

$46,000.00

*fee workbook*

006

For value received, the undersigned **MIRSAD M. SKILJAN, an individual**, with an address of **1000 Rutger Street, Utica, New York 13501** (the "Borrower"), promises to pay to the order of M&T Bank, a New York banking corporation with an address of One M&T Plaza (Attn: Office of General Counsel), Buffalo, New York 14203 (together with its successors and assigns, the "Bank"), the principal amount of **Forty-Six Thousand Dollars and Zero Cents ($46,000.00)** on or before May _24_, 2018 (the "Maturity Date"), as set forth below, together with interest from the date hereof on the unpaid principal balance from time to time outstanding until paid in full. The Borrower shall pay consecutive monthly installments of principal, as follows: **$766.67** commencing on June _24_, 2013, and the same amount (except the last installment which shall be the unpaid balance) on the _24_ of each month thereafter. The aggregate principal balance outstanding shall bear interest thereon at a per annum rate equal to **Six and One-Half Percent (6.50%)** above the Wall Street Journal Prime Rate (as hereinafter defined). All accrued and unpaid interest shall be payable monthly in arrears on the _24_ of each month, commencing on June _24_, 2013.

Reference is hereby made to a certain loan agreement dated on or about the date hereof, as amended, between the Borrower and the Bank for additional terms and conditions applicable to this Note.

The principal amount of this Note will be amortized over 60 months starting from the date of this Note.

Wall Street Journal Prime Rate means the highest rate published from time to time by the Wall Street Journal as the U.S. Prime Rate, or, in the event the Wall Street Journal ceases publication of the Prime Rate, the base, reference or other rate then designated by the Bank, in its sole discretion, for general commercial loan reference purposes, it being understood that such rate is a reference rate, not necessarily the lowest, established from time to time, which serves as the basis upon which effective interest rates are calculated for loans making reference thereto.

The effective interest rate applicable to the Borrower's loans evidenced hereby shall change as of the first day of any month (each an "Interest Determination Date") if there is a change in the Wall Street Journal Prime Rate as of any such Interest Determination Date.

Principal and interest shall be payable at the Bank's main office or at such other place as the Bank may designate in writing in immediately available funds in lawful money of the United States of America without set-off, deduction or counterclaim. Interest shall be calculated on the basis of actual number of days elapsed and a 360-day year.

At the option of the Bank, this Note shall become immediately due and payable without notice or demand upon the occurrence at any time of any of the following events of default (each, an "Event of Default"): (1) default of any liability, obligation, covenant or undertaking of the Borrower or any guarantor hereof to the Bank or Bank Affiliates (as hereafter defined), hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Borrower or any guarantor hereof under any other loan document delivered by the Borrower or any guarantor, or in connection with the loan evidenced by this Note or any other agreement by the Borrower or any guarantor with the Bank; (2) failure of the Borrower or any guarantor hereof to maintain aggregate collateral security value satisfactory to the Bank; (3) default of any material liability, obligation or undertaking of the Borrower or any guarantor hereof to any other party; (4) if any statement, representation or warranty heretofore, now or hereafter made by the Borrower or any guarantor hereof in connection with the loan evidenced by this Note or in any supporting financial statement of the Borrower or any guarantor hereof shall be determined by the Bank to have been false or misleading in any material respect when made; (5) if the Borrower or any guarantor hereof is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property; (6) the death of the Borrower or any guarantor hereof and, if the Borrower or any guarantor hereof is a partnership or limited liability company, the death of any partner or member; (7) the institution by or against the Borrower or any guarantor hereof of any proceedings under the Bankruptcy Code 11 USC §101 et seq. or any other law in which the Borrower or any guarantor hereof is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Borrower or any guarantor hereof of an assignment for the benefit of creditors or the granting by the Borrower or any guarantor hereof of a trust mortgage for the benefit of creditors; (8) the service upon the Bank of a writ in which the Bank is named as trustee of the Borrower or any guarantor hereof; (9) a judgment or judgments for the payment of money shall be rendered against the Borrower or any guarantor hereof, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution; (10) any levy, lien (including mechanics lien) except as permitted

under any of the other loan documents between the Bank and the Borrower; seizure, attachment, execution or similar process until so issued or levied on any of the property of the Borrower or any guarantor hereof; (11)  the termination or revocation of any guaranty hereof; or (12)  the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower or any guarantor hereof, or the occurrence of any other event or circumstance, such that the Bank, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Borrower or any guarantor hereof to the Bank has been or may be impaired.

301

Payments may be applied in any order in the sole discretion of the Bank, but, prior to default, may be applied chronologically (i.e., oldest invoice first) to unpaid amounts due and owing, in the following order: first to accrued interest, then to principal, then to escrow, then to late charges and other fees, and then to all other expenses.  Notwithstanding the foregoing, any payments received after the occurrence and during the continuance of an Event of Default shall be applied in such manner as the Bank may determine. The Borrower hereby authorizes the Bank to charge any deposit account which the Borrower may maintain with the Bank for any payment required hereunder without prior notice to the Borrower.

If pursuant to the terms of this Note, the Borrower is at any time obligated to pay interest on the principal balance at a rate in excess of the maximum interest rate permitted by applicable law for the loan evidenced by this Note, the applicable interest rate shall be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

**The Borrower represents to the Bank that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224.**

The Borrower grants to the Bank a continuing lien on and security interest in any and all deposits or other sums at any time credited by or due from the Bank or any Bank Affiliate (as hereinafter defined) to the Borrower and any cash, securities, instruments or other property of the Borrower in the possession of the Bank or any Bank Affiliate, whether for safekeeping or otherwise, or in transit to or from the Bank or any Bank Affiliate (regardless of the reason the Bank or Bank Affiliate had received the same or whether the Bank or Bank Affiliate has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower to the Bank or any Bank Affiliate and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower to the Bank or any Bank Affiliate at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Bank or any Bank Affiliate.

No delay or omission on the part of the Bank in exercising any right hereunder shall operate as a waiver of such right or of any other right of the Bank, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion.  The Borrower and any other party obligated on account of this Note by contract, by operation of law or otherwise (the Borrower and each Borrower, if more than one, and each such other party, an "Obligor"), regardless of the time, order or place of signing, waive presentment, demand, protest, notice of intent to accelerate, notice of acceleration and all other notices of every kind in connection with the delivery, acceptance, performance or enforcement of this Note and assent to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral, and to the addition or release of any other party or person primarily or secondarily liable and waives all recourse to suretyship and guarantor defenses generally, including any defense based on impairment of collateral.  To the maximum extent permitted by law, the Borrower waives and terminates any homestead rights and/or exemptions respecting any premises under the provisions of any applicable homestead laws, including without limitation, Section 5206 of the Civil Practice Law and Rules of New York.

The Borrower shall indemnify, defend and hold the Bank and the Bank Affiliates and their directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless against any claim brought or threatened against any Indemnitee by the Borrower or by any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of the Bank's relationship with the Borrower (each of which may be defended, compromised, settled or pursued by the Bank with counsel of the Bank's selection, but at the expense of the Borrower), except for any claim arising out of the gross negligence or willful misconduct of the Bank.

The Borrower agrees to pay, upon demand, costs of collection of all amounts under this Note including, without limitation, principal and interest, or in connection with the enforcement of, or realization on, any security for this Note, including, without limitation, to the extent permitted by applicable law, reasonable attorneys' fees and expenses.  Upon the occurrence and during the continuance of an Event of Default, interest shall accrue at a rate per annum equal to the aggregate of 5.0% plus the rate provided for herein.  If any payment due under this Note is unpaid for 5 days or more, the Borrower shall pay, in addition to any other sums due under this Note (and without limiting the Bank's other remedies on account thereof), a late charge equal to the greater of $50 or 5.0% of such unpaid amount, or the Bank's then current late charge as announced from time to time (which amount shall be subject to and limited so as to not be in violation of the provisions of Section 254-b of New York Real Property Law, if applicable).

This Note shall be binding upon the Borrower and upon its heirs, successors, assigns and legal representatives, and shall inure to the benefit of the Bank and its successors, endorsees and assigns.

The liabilities of the Borrower and each Borrower, if more than one, and any Obligor are joint and several; provided, however, the release by the Bank of the Borrower or any one or more Obligors shall not release any other person obligated on account of this

Note. Any and all present and future debts of the Borrower to any Obligor are subordinated to the full payment and performance of all present and future debts and obligations of the Borrower to the Bank. Each reference in this Note to the Borrower and each Borrower, if more than one, and Obligor, is to such person individually and also to all such persons jointly. No person obligated on account of this Note may seek contribution from any other person also obligated, unless and until all liabilities, obligations and indebtedness to the Bank of the person from whom contribution is sought have been irrevocably satisfied in full. The release or compromise by the Bank of any collateral shall not release any person obligated on account of this Note.

The Borrower authorizes the Bank to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note may be made by the Bank, and any such reproduction shall be admissible in evidence with the same effect as the original itself in any judicial or administrative proceeding, whether or not the original is in existence.

The Borrower will from time to time execute and deliver to the Bank such documents, and take or cause to be taken, all such other further action, as the Bank may request in order to effect and confirm or vest more securely in the Bank all rights contemplated by this Note or any other loan documents related thereto (including, without limitation, to correct clerical errors) or to vest more fully in or assure to the Bank the security interest in any collateral securing this Note or to comply with applicable statute or law.

This Note shall be governed by the laws of the State of New York without giving effect to the conflicts of laws principles thereof.

Any demand or notice hereunder or under any applicable law pertaining hereto shall be in writing and duly given if delivered to any party hereto at the address for such party as set forth herein, or at such other address as any party may from time to time designate in written notice received by the other parties hereto; provided, however, that in order for any notice to the Bank to be deemed effective, a duplicate notice shall be separately delivered to the Bank at the current office address of the Bank officer primarily responsible for the customer account to which this document relates. Any such demand or notice shall be deemed sufficiently given for all purposes when delivered (i) by personal delivery and shall be deemed effective when delivered, or (ii) by mail or courier and shall be deemed effective three (3) business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one (1) business day after delivery to a nationally recognized overnight courier service. Notice by e-mail is not valid notice under this or any other agreement between the undersigned parties.

The term "Bank Affiliate" as used in this Note shall mean any banking or lending affiliates of the Bank, any party acting as a participant lender in the credit arrangements contemplated herein, or any third party acting on the Bank's behalf.

Except as set forth below, no change in this Note or waiver of any right or remedy hereunder can be made except in a writing signed by the Bank. No course of dealing or other conduct, no oral agreement or representation made by the Bank, and no usage of trade, shall operate as a waiver of any right or remedy of the Bank. No waiver of any right or remedy of the Bank shall be effective unless made specifically in writing by the Bank.

This Note, together with any related loan and security agreements and guaranties, contains the entire agreement between the Borrower and the Bank with respect to the Note, and supersedes every course of dealing, other conduct, oral agreement and representation previously made by the Bank.

If there is more than one obligor to the Bank named herein and signing below, each such obligor shall be jointly and severally liable for the payment of all amounts and performance of all obligations required hereunder.

**Preauthorized Transfers from Deposit Account.** If a deposit account number is provided, Borrower hereby authorizes the Bank to debit Borrower's deposit account #000009850277261 with the Bank automatically for any amount which becomes due under this Note.

The Borrower irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in New York, over any suit, action or proceeding arising out of or relating to this Note. The Borrower irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Borrower hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Borrower's, address shown below or as notified to the Bank and (ii) by serving the same upon the Borrower(s) in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Borrower.

**THE BORROWER AND THE BANK EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS NOTE, ANY OF THE OBLIGATIONS OF THE BORROWER TO THE BANK, AND ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN, WAIVED. THE BORROWER AND THE BANK EACH CERTIFIES THAT NEITHER THE BANK NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY**

JURY.

Borrower acknowledges that it has read and understands all provisions of this Note and has been advised by counsel as necessary or appropriate.

Executed as of May _24_, 2013.

Witness:                                    Borrower:

_Terry Plsgs_                              _M. Skiljan_
                                           Mirsad M. Skiljan, Individually

                                           1000 Rutger Street
                                           Utica, New York
                                           13501

STATE OF NEW YORK                                :
                                                 : ss.
COUNTY OF ~New York~ - Herkimer   .

On the _24th_ day of _May_ in the year 20_13_, before me, the undersigned, a Notary Public in and for said State, personally appeared, Mirsad M. Skiljan, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Paul M Gagliardi_
NOTARY PUBLIC

_Paul M Gagliardi_
TYPE OR PRINT NAME

PAUL M. GAGLIARDI
Notary Public, State of New York
Registered in Herkimer County
Commission Expires June 30, 20_15_.

FOR BANK USE ONLY

Authorization Confirmed: _____
Signature per C.P. 4.15.10
_____

4



## LOAN AGREEMENT

This LOAN AGREEMENT (this "Agreement") is entered into as of **May JL/ 13,**         between **MIRSAD M. SKILJAN, an individual,** with an address of **1000 Rutger Street, Utica, New York  13501** (the "Borrower") and M&T Bank, a New York banking corporation, with an address of One M&T Plaza (Attn: Office of General Counsel), Buffalo, New York  14203 (the "Bank").

FOR VALUE RECEIVED, and in consideration of the granting by the Bank of financial accommodations to or for the benefit of the Borrower, including without limitation respecting the Obligations (as hereinafter defined), the Borrower represents to and agrees with the Bank, as of the date hereof and as of the date of each loan, credit and/or other financial accommodation, as follows:

### 1.    THE LOAN

1.1        Loan(s).  Bank agrees, from time to time, in its sole discretion, to make loans (collectively, the "Loans") to or for the account of Borrower, upon Borrower's request therefor, in such amounts as shall be mutually agreed upon, subject to the terms and conditions set forth herein.  Loans shall be evidenced by one or more notes issued by the Borrower in favor of the Bank (collectively, and each a "Note").  This Agreement, each Note and any and all other documents, amendments or renewals executed and delivered in connection with any of the foregoing are collectively hereinafter referred to as the "Loan Documents".

1.2        Definitions.  The following definitions shall apply:

(a)        "Bank Affiliate" shall mean any banking or lending affiliates of the Bank, any party acting as a participant lender in the credit arrangements contemplated herein, or any third party acting on the Bank's behalf.

(b)        "Code" shall mean the New York Uniform Commercial Code as amended from time to time.

(c)        "Obligation(s)" shall mean, without limitation, all loans, advances, indebtedness, notes, liabilities, rate swap transactions, basis swaps, forward rate transactions, commodity swaps, commodity options, equity or equity index swaps, equity or equity index options, bond options, interest rate options, foreign exchange transactions, cap transactions, floor transactions, collar transactions, forward transactions, currency swap transactions, cross-currency rate swap transactions, currency options and amounts, liquidated or unliquidated, owing by the Borrower to the Bank at any time, of each and every kind, nature and description, whether arising under this Agreement or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Borrower to the Bank; or are due indirectly by the Borrower to the Bank as endorser, guarantor or other surety, or as borrower of obligations due third persons which have been endorsed or assigned to the Bank, or otherwise), absolute or contingent, due or to become due, now existing or hereafter arising or contracted, including, without limitation, payment when due of all amounts outstanding respecting any of the Loan Documents.  Said term shall also include all interest and other charges chargeable to the Borrower or due from the Borrower to the Bank from time to time and all costs and expenses referred to in this Agreement.

(d)        "Person" or "party" shall mean individuals, partnerships, corporations, limited liability companies and all other entities.

All words and terms used in this Agreement other than those specifically defined herein shall have the meanings accorded to them in the Code.

### 2.    REPRESENTATIONS AND WARRANTIES

2.1        Records.  All books and records of the Borrower's business, including but not limited to its books of account, are accurate and up to date and will be so maintained.

2.2        Title to Properties: Absence of Liens.  Borrower has good and clear record and marketable title to all of its properties and assets, and all of its properties and assets are free and clear of all mortgages, liens, pledges, charges, encumbrances and setoffs, except those mortgages, deeds of trust, leases of personal property and security interests previously specifically consented to in writing by the Bank.

2.3     Places of Business.  Borrower shall, during the term of this Agreement, keep the Bank currently and accurately informed in writing of each of Borrower's place of residence and Borrower's places of business, and shall not open or close, move or change any existing or new place of business without giving the Bank at least thirty (30) days prior written notice thereof.

2.4     Valid Obligations.  The Loan Documents represent legal, valid and binding obligations of Borrower and are fully enforceable according to their terms, except as limited by laws relating to the enforcement of creditors' rights.

2.5     Conflicts.  There is no provision in any indenture, contract or agreement to which Borrower is a party which prohibits, limits or restricts the execution, delivery or performance of the Loan Documents.

2.6     Governmental Approvals.  The execution, delivery and performance of the Loan Documents does not require any approval of or filing with any governmental agency or authority.

2.7     Litigation, etc.  There are no actions, claims or proceedings pending or to the knowledge of Borrower threatened against Borrower which might materially adversely affect the ability of Borrower to conduct its business or to pay or perform the Obligations.

2.8     Taxes.  The Borrower has filed all Federal, state and other tax returns required to be filed (except for such returns for which current and valid extensions have been filed), and all taxes, assessments and other governmental charges due from the Borrower have been fully paid.  The Borrower has established on its books reserves adequate for the payment of all Federal, state and other tax liabilities (if any).

2.9     Use of Proceeds.  No portion of any loan is to be used for (i) the purpose of purchasing or carrying any "margin security" or "margin stock" as such terms are used in Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. 221 and 224 or (ii) primarily personal, family or household purposes.

2.10     Environmental.  As of the date hereof neither the Borrower nor any of Borrower's agents, employees or independent contractors (1) have caused or are aware of a release or threat of release of Hazardous Materials (as defined herein) on any of the premises or personal property owned or controlled by Borrower ("Controlled Property") or any property abutting Controlled Property ("Abutting Property"), which could give rise to liability under any Environmental Law (as defined herein) or any other Federal, state or local law, rule or regulation; (2) have arranged for the transport of or transported any Hazardous Materials in a manner as to violate, or result in potential liabilities under, any Environmental Law; (3) have received any notice, order or demand from the Environmental Protection Agency or any other Federal, state or local agency under any Environmental Law; (4) have incurred any liability under any Environmental Law in connection with the mismanagement, improper disposal or release of Hazardous Materials; or (5) are aware of any inspection or investigation of any Controlled Property or Abutting Property by any Federal, state or local agency for possible violations of any Environmental Law.

To the best of Borrower's knowledge, neither Borrower, nor any prior owner or tenant of any Controlled Property, committed or omitted any act which caused the release of Hazardous Materials on such Controlled Property which could give rise to a lien thereon by any Federal, state or local government.  No notice or statement of claim or lien affecting any Controlled Property has been recorded or filed in any public records by any Federal, state or local government for costs, penalties, fines or other charges as to such property.  All notices, permits, licenses or similar authorizations,  if any, required to be obtained or filed in connection with the ownership, operation, or use of the Controlled Property, including without limitation, the past or present generation, treatment, storage, disposal or release of any Hazardous Materials into the environment, have been duly obtained or filed.

Borrower agrees to indemnify and hold the Bank and any Bank Affiliate harmless from all liability, loss, cost, damage and expense, including attorney fees and costs of litigation, arising from any and all of its violations of any Environmental Law (including those arising from any lien by any Federal, state or local government arising from the presence of Hazardous Materials) or from the presence of Hazardous Materials located on or emanating from any Controlled Property or Abutting Property whether existing or not existing and whether known or unknown at the time of the execution hereof and regardless of whether or not caused by, or within the control of Borrower.  Borrower further agrees to reimburse Bank upon demand for any costs incurred by Bank in connection with the foregoing.  Borrower agrees that its obligations hereunder shall be continuous and shall survive the repayment of all debts to Bank and shall continue so long as a valid claim may be lawfully asserted against the Bank.

The term "Hazardous Materials" includes but is not limited to any and all substances (whether solid, liquid or gas) defined, listed, or otherwise classified as pollutants, hazardous wastes, hazardous substances, hazardous materials, extremely hazardous wastes, or words of similar meaning or regulatory effect under any present or future Environmental Law or that may have a negative impact on human health or the environment, including but not limited to petroleum and petroleum products, asbestos and asbestos-containing materials, polychlorinated biphenyls, lead, radon, radioactive materials, flammables and explosives.

The term "Environmental Law" means any present and future Federal, state and local laws, statutes, ordinances, rules, regulations and the like, as well as common law, relating to protection of human health or the environment, relating to Hazardous Materials, relating to

liability for or costs of remediation or prevention of releases of Hazardous Materials or relating to liability for or costs of other actual or threatened danger to human health or the environment. The term "Environmental Law" includes, but is not limited to, the following statutes, as amended, any successor thereto, and any regulations promulgated pursuant thereto, and any state or local statutes, ordinances, rules, regulations and the like addressing similar issues: the Comprehensive Environmental Response, Compensation and Liability Act; the Emergency Planning and Community Right-to-Know Act; the Hazardous Materials Transportation Act; the Resource Conservation and Recovery Act (including but not limited to Subtitle I relating to underground storage tanks); the Solid Waste Disposal Act; the Clean Water Act; the Clean Air Act; the Toxic Substances Control Act; the Safe Drinking Water Act; the Occupational Safety and Health Act; the Federal Water Pollution Control Act; the Federal Insecticide, Fungicide and Rodenticide Act; the Endangered Species Act; the National Environmental Policy Act; the River and Harbors Appropriation Act; and the New York Environmental Conservation Law, Chapter 43-B of the New York Consolidated Laws.

## 3.   AFFIRMATIVE COVENANTS

3.1      Payments and Performance.   Borrower will duly and punctually pay all Obligations becoming due to the Bank and will duly and punctually perform all Obligations on its part to be done or performed under this Agreement.

3.2      Books and Records; Inspection.   Borrower will at all times keep proper books of account in which full, true and correct entries will be made of its transactions in accordance with generally accepted accounting principles, consistently applied and which are, in the opinion of a Certified Public Accountant acceptable to Bank, adequate to determine fairly the financial condition and the results of operations of Borrower. Borrower will at all reasonable times make its books and records available in its offices for inspection, examination and duplication by the Bank and the Bank's representatives and will permit inspection of the Collateral and all of its properties by the Bank and the Bank's representatives. Borrower will from time to time furnish the Bank with such information and statements as the Bank may request in its sole discretion with respect to the Obligations or the Bank's security interest in the Collateral.

3.3      Financial Statements.   Borrower will furnish to Bank:

(a)      from time to time, such financial data and information about Borrower as Bank may reasonably request; and

(b)      any financial data and information about any guarantors of the Obligations as Bank may reasonably request.

3.4      Conduct of Business.   The Borrower will comply with all laws and regulations of the United States and of any state or states thereof and of any political subdivision thereof, and of any governmental authority which may be applicable to it or to its business; provided that this covenant shall not apply to any tax, assessment or charge which is being contested in good faith and with respect to which reserves have been established and are being maintained.

3.5      Contact with Accountant.   The Borrower hereby authorizes the Bank to directly contact and communicate with any accountant employed by Borrower in connection with the review and/or maintenance of Borrower's books and records or preparation of any financial reports delivered by or at the request of Borrower to Bank.

3.6      Operating and Deposit Accounts.   The Borrower shall maintain with the Bank its primary business operating and deposit accounts. At the option of the Bank, all loan payments and fees will automatically be debited from the Borrower's primary business operating account and all advances will automatically be credited to the Borrower's primary business operating account.

3.7      Taxes.   Borrower will promptly pay all real and personal property taxes, assessments and charges and all franchise, income, unemployment, retirement benefits, withholding, sales and other taxes assessed against it or payable by it before delinquent; provided that this covenant shall not apply to any tax assessment or charge which is being contested in good faith and with respect to which reserves have been established and are being maintained.

3.8      Maintenance.   Borrower will keep and maintain its properties, if any, in good repair, working order and condition. Borrower will immediately notify the Bank of any loss or damage to or any occurrence which would adversely affect the value of any such property.

3.9      Insurance.   Borrower will maintain in force property and casualty insurance on any property of the Borrower, if any, against risks customarily insured against by companies engaged in businesses similar to that of the Borrower containing such terms and written by such companies as may be satisfactory to the Bank, such insurance to be payable to the Bank as its interest may appear in the event of loss and to name the Bank as insured pursuant to a standard loss payee clause; no loss shall be adjusted thereunder without the Bank's approval; and all such policies shall provide that they may not be canceled without first giving at least Thirty (30) days written notice of cancellation to the Bank. Borrower will also maintain liability insurance containing such terms and written by such companies as may be satisfactory to the Bank, with the Bank to be named as an additional insured under such policies. In the event that the Borrower fails to provide evidence of such insurance, the Bank may, at its option, secure such insurance and charge the cost thereof to the Borrower. At the option of the Bank, all insurance proceeds received from any loss or damage to any property shall be

applied either to the replacement or repair thereof or as a payment on account of the Obligations. From and after the occurrence of an Event of Default, the Bank is authorized to cancel any insurance maintained hereunder and apply any returned or unearned premiums, all of which are hereby assigned to the Bank, as a payment on account of the Obligations.

3.1 o     <u>Notification of Default.</u>  Immediately upon becoming aware of the existence of any condition or event which constitutes an Event of Default, or any condition or event which would upon notice or lapse of time, or both, constitute an Event of Default, Borrower shall give Bank written notice thereof specifying the nature and duration thereof and the action being or proposed to be taken with respect thereto.

3.11     <u>Notification of Material Litigation.</u>  Borrower will immediately notify the Bank in writing of any litigation or of any investigative proceedings of a governmental agency or authority commenced or threatened against it which would or might be materially adverse to the financial condition of Borrower or any guarantor of the Obligations.

3.12     <u>Pension Plans.</u>  With respect to any pension or benefit plan maintained by Borrower, or to which Borrower contributes ("Plan"), the benefits under which are guarantied, in whole or in part, by the Pension Benefit Guaranty Corporation created by the Employee Retirement Income Security Act of 1974, P.L. 93-406, as amended ("ERISA") or any governmental authority succeeding to any or all of the functions of the Pension Benefit Guaranty Corporation ("Pension Benefit Guaranty Corporation"), Borrower will (a) fund each Plan as required by the provisions of Section 412 of the Internal Revenue Code of 1986, as amended; (b) cause each Plan to pay all benefits when due; (c) furnish Bank (i) promptly with a copy of any notice of each Plan's termination sent to the Pension Benefit Guaranty Corporation (ii) no later than the date of submission to the Department of Labor or to the Internal Revenue Service, as the case may be, a copy of any request for waiver from the funding standards or extension of the amortization periods required by Section 412 of the Internal Revenue Code of 1986, as amended and (iii) notice of any Reportable Event as such term is defined in ERISA; and (d) subscribe to any contingent liability insurance provided by the Pension Benefit Guaranty Corporation to protect against employer liability upon termination of a guarantied pension plan, if available to Borrower.

## 4.     NEGATIVE COVENANTS

4.1     <u>Limitations on Indebtedness.</u>  Borrower shall not issue any evidence of indebtedness or create, assume, guarantee, become contingently liable for, or suffer to exist indebtedness in addition to indebtedness to the Bank, except indebtedness or liabilities **of Borrower, other than for money borrowed, incurred or arising in the ordinary course of business.**

4.2     <u>Loans or Advances.</u>  Borrower shall not make any loans or advances to any individual, partnership, corporation, limited liability company, trust, or other organization or person, including without limitation its employees; provided, however, that Borrower may make advances to its employees, with respect to expenses incurred or to be incurred by such employees in the ordinary course of business which expenses are reimbursable by Borrower; and provided further, however, that Borrower may extend credit in the ordinary **course of business in accordance with customary trade practices.**

4.3     <u>Capital Expenditures.</u>  The Borrower shall not, directly or indirectly, make or commit to make capital expenditures by lease, purchase, or otherwise, except in the ordinary and usual course of business for the purpose of replacing machinery, equipment **or other personal property which, as a consequence of wear, duplication or obsolescence, is no longer used or necessary in the Borrower's business.**

4.4     <u>Sale of Assets.</u>  Borrower shall not sell, lease or otherwise dispose of any of its assets, except in the ordinary and usual course of business and except for the purpose of replacing machinery, equipment or other personal property which, as a consequence **of wear, duplication or obsolescence, is no longer used or necessary in the Borrower's business, provided that fair consideration is** received therefor; provided, however, in no event shall the Borrower sell, lease or otherwise dispose of any equipment purchased with the proceeds of any loans made by the Bank.

4.5     <u>Restriction on Liens.</u>  Borrower shall not grant any security interest in, or mortgage of, any of its properties or assets. Borrower shall not enter into any agreement with any person other than the Bank that prohibits the Borrower from granting any security interest in, or mortgage of, any of its properties or assets.

4.6     <u>Other Business.</u>  Borrower shall not engage in any business other than the business in which it is currently engaged or a business reasonably allied thereto.

4.7     <u>Change of Name, etc.</u>  Borrower shall not change its legal name or his or her primary residence, without giving the Bank at least 30 days prior written notice thereof.

## 5.     DEFAULT

5.1     <u>Default.</u>  "Event of Default" shall mean the occurrence of one or more of any of the following events:

(a)     default of any liability, obligation, covenant or undertaking of the Borrower or any guarantor of the Obligations to the Bank, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Borrower or any guarantor of the Obligations under any other Loan Document or any other agreement with the Bank;

(b)     failure of the Borrower or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to the Bank;

(c)     default of any material liability, obligation or undertaking of the Borrower or any guarantor of the Obligations to any other party;

(d)     if any statement, representation or warranty heretofore, now or hereafter made by the Borrower or any guarantor of the Obligations in connection with this Agreement or in any supporting financial statement of the Borrower or any guarantor of the Obligations shall be determined by the Bank to have been false or misleading in any material respect when made;

(e)     if the Borrower or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the **liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into** another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(f)     the death of the Borrower or any guarantor of the Obligations and, if the Borrower or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(g)     the institution by or against the Borrower or any guarantor of the Obligations of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Borrower or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Borrower or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Borrower or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(h)     the service upon the Bank of a writ in which the Bank is named as trustee of the Borrower or any guarantor of the Obligations;

(i)     a judgment or judgments for the payment of money shall be rendered against the Borrower or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

(j)     any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Borrower or any guarantor of the Obligations;

(k)     the termination or revocation of any guaranty of the Obligations; or

(l)     the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that the Bank, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Borrower or any guarantor of the Obligations to the Bank has been or may be impaired.

5.2     <u>Acceleration.</u>  If an Event of Default shall occur, at the election of the Bank, all Obligations shall become immediately due and payable without notice or demand, except with respect to Obligations payable on DEMAND, which shall be due and payable on DEMAND, whether or not an Event of Default has occurred.

5.3     <u>Nonexclusive Remedies.</u>  All of the Bank's rights and remedies not only under the provisions of this Agreement but also under any other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by the Bank at such time or times and in such order of preference as the Bank in its sole discretion may determine.

## 6.     MISCELLANEOUS

6.1     <u>**Waivers.**</u>  **The Borrower waives notice of intent to accelerate, notice of acceleration, notice of nonpayment, demand,**

presentment, protest or notice of protest of the Obligations, and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof.

6.2     <u>Deposit Collateral.</u>  The Borrower hereby grants to the Bank a continuing lien and security interest in any and all deposits or other sums at any time credited by or due from the Bank or any Bank Affiliate to the Borrower and any cash, securities, instruments or other property of the Borrower in the possession of the Bank or any Bank Affiliate, whether for safekeeping or otherwise, or in transit to or from the Bank or any Bank Affiliate (regardless of the reason the Bank or Bank Affiliate had received the same or whether the Bank or Bank Affiliate has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower to the Bank or any Bank Affiliate and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower to the Bank or any Bank Affiliate at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to the Bank or any Bank Affiliate.

6.3     <u>Indemnification.</u>  The Borrower shall indemnify, defend and hold the Bank and any Bank Affiliate and their directors, officers, employees, agents and attorneys (each an "Indemnitee") harmless of and from any claim brought or threatened against any Indemnitee by the Borrower, any guarantor or endorser of the Obligations, or any other person (as well as from reasonable attorneys' fees and expenses in connection therewith) on account of the Bank's relationship with the Borrower, or any guarantor or endorser of the Obligations (each of which may be defended, compromised, settled or pursued by the Bank with counsel of the Bank's election, but at the expense of the Borrower), except for any claim arising out of the gross negligence or willful misconduct of the Bank.  The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by the Bank in favor of the Borrower.

6.4     <u>Costs and Expenses.</u>  The Borrower shall pay to the Bank on demand any and all costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements, court costs, litigation and other expenses) incurred or paid by the Bank in establishing, maintaining, protecting or enforcing any of the Bank's rights or the Obligations, including, without limitation, any and all such costs and expenses incurred or paid by the Bank in defending the Bank's security interest in, title or right to any collateral or in collecting or attempting to collect or enforcing or attempting to enforce payment of any Obligation.

6.5     <u>Counterparts.</u>  This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute but one agreement.

6.6     <u>Severability.</u>  If any provision of this Agreement or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Agreement (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

6.7     <u>Complete Agreement.</u>  This Agreement and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

6.8     <u>Binding Effect of Agreement.</u>  This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and the Bank shall be entitled to rely thereon) until released in writing by the Bank.  The Bank may transfer and assign this Agreement and deliver it to the assignee, who shall thereupon have all of the rights of the Bank; and the Bank shall then be relieved and discharged of any responsibility or liability with respect to this Agreement.  The Borrower may not assign or transfer any of its rights or obligations under this Agreement.  Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Agreement or the other Loan Documents.

6.9     <u>Further Assurances.</u>  Borrower will from time to time execute and deliver to Bank such documents, and take or cause to be taken, all such other or further action, as Bank may request in order to effect and confirm or vest more securely in Bank all rights contemplated by this Agreement and the other Loan Documents (including, without limitation, to correct clerical errors) or to comply with applicable statute or law.

6.10    <u>Amendments and Waivers.</u>  This Agreement may be amended and Borrower may take any action herein prohibited, or omit to perform any act herein required to be performed by it, if Borrower shall obtain the Bank's prior written consent to each such **amendment, action or omission to act.  No course of dealing and no delay or omission on the part of Bank in exercising any right hereunder shall operate as a waiver of such right or any other right and waiver on any one or more occasions shall not be construed as** a bar to or waiver of any right or remedy of Bank on any future occasion.

6.11    <u>Terms of Agreement.</u>  This Agreement shall continue in full force and effect so long as any Obligations or obligation of Borrower to Bank shall be outstanding, or the Bank shall have any obligation to extend any financial accommodation hereunder, and is supplementary to each and every other agreement between Borrower and Bank and shall not be so construed as to limit or otherwise

derogate from any of the rights or remedies of Bank or any of the liabilities, obligations or undertakings of Borrower under any such agreement, nor shall any contemporaneous or subsequent agreement between Borrower and the Bank be construed to limit or otherwise derogate from any of the rights or remedies of Bank or any of the liabilities, obligations or undertakings of Borrower hereunder, unless such other agreement specifically refers to this Agreement and expressly so provides.

6.12      Notices. Any demand or notice hereunder or under any applicable law pertaining hereto shall be in writing and duly given if delivered to any party hereto at the address for such party as set forth herein, or at such other address as any party may from time to time designate in written notice received by the other parties hereto; provided, however, that in order for any notice to the Bank to be deemed effective, a duplicate notice shall be separately delivered to the Bank at the current office address of the Bank officer primarily responsible for the customer account to which this document relates. Any such demand or notice shall be deemed sufficiently given for all purposes when delivered (i) by personal delivery and shall be deemed effective when delivered, or (ii) by mail or courier and shall be deemed effective three (3) business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one (1) business day after delivery to a nationally recognized overnight courier service.  Notice by e-mail is not valid notice under this or any other agreement between the undersigned parties.

6.13      Governing Law. This Agreement shall be governed by the laws of the State of New York without giving effect to the conflicts of laws principles thereof.

6.14      Reproductions. This Agreement and all documents which have been or may be hereinafter furnished by Borrower to the Bank may be reproduced by the Bank by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

6.15      Jurisdiction and Venue. Borrower irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in New York, over any suit, action or proceeding arising out of or relating to this Agreement.  Borrower irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum.  Borrower hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Borrower's address shown in this Agreement or as notified to the Bank and (ii) by serving the same upon the Borrower in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon Borrower.

6.16      **JURY WAIVER.   THE BORROWER AND BANK EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (8) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED. THE BORROWER CERTIFIES THAT NEITHER THE BANK NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

Executed as of **May  _J¼_  2013.**

Witness:

_Jury Plyg?_

Borrower:

_M.Skiljan_

Mirsad M. Skiljan, individually

Accepted: M&T Bank

By: _Therese Plup_

Name: Therese K. Plizga
Title:   Vice President

7

Case No.: 6:20-CV-0109 (DNH/ATB)


Exhibit B

U.S. Small Business Administration

**AUTHORIZATION**
**(SBA *Express* LOAN)**

**SBA Loan# 61829250-04**

| | |
|---|---|
| U.S. Small Business Administration | Lender: |
| **Sacramento Loan Processing Center** | **Manufacturers and Traders Trust Company** |
| **501 I Street, Suite 12-100** | **One M&T Plaza, 17th floor** |
| **Sacramento, CA 95814-2322** | **Buffalo, NY 14203** |

Lender is issuing this SBA Express Loan Authorization for SBA to guarantee **50%** of a loan in the amount of **$46,000.00** to be made by Lender to assist:

Borrower:   **Mirsad M Skiljan**
**1000 Rutger St**
**Utica, NY 13501**

Lender's issuance is in accordance with the SBA Express Supplemental Loan Guaranty Agreement between Lender and SBA.

This Authorization is subject to the application submitted by Borrower and the following terms and conditions:

1. Lender must comply with current SBA Form 750, and the provisions of the Small Business Act, 15 U.S.C. § 631, et. seq., SBA Standard Operating Procedures, SBA Official Notices, the SBA Express Program Guide, and the SBA Express Supplemental Loan Guaranty Agreement between Lender and SBA, all of which may be amended from time to time.

2. Lender must make first disbursement of the loan no later than **six** months, and complete disbursement no later than **twelve** months, from the date of this Authorization. For a revolving line of credit loan, Lender must make no disbursement of this loan beyond the maturity date.

3. For loans with a maturity of more than 12 months, Lender must pay a guaranty fee of 2% of the amount guaranteed for loans of $150,000 or less (Lender may retain no more than 25% of this fee) and 3% for loans of more than $150,000 to the Small Business Administration, Denver, CO 80259-0001, within 90 days of the date of this Authorization.   For loans with a maturity of 12 months or less, Lender must pay a guaranty fee of .25% of the amount guaranteed to the same address within 10 days after SBA issued the SBA Loan Number. The guaranty fee for this loan is **$460.00**

4. Lender must have Borrower execute a Note containing the following repayment terms:

This is a **term loan** that will mature in **(5) year(s)**. The interest rate is **variable at Wall Street Journal Prime + 6.50%, variable rate, adjusted every month**. The borrower will make **(60) monthly payments of principal plus interest.**

5. Lender must develop and maintain evidence of a system or process to reasonably ensure that proceeds of loan were used for the following eligible business purposes:

**$46,000.00: for vehicle finance.**

**SBA Form 2236 (05/25/2005)**

6.  Lender must satisfy the following collateral conditions:

First lien position lien on 2009 Kanworth TBBO, VIN J.251940

LENDER

By: _____          May 15, 2013
(Authorized Signature)                        (Date)

_____
(Sean McCabe, Vice President)

SBA Form 2236 (OS/2S/200S)

Case No.: 6:20-CV-0109 (DNH/ATB)

Exhibit C



U.S. DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE
WASHINGTON, DC 20227

ACTING ON BEHALF OF
U.S. SMALL BUSINESS ADMINISTRATION
CERTIFICATE OF INDEBTEDNESS

October 30, 2019

Mirsad M. Skiljan
1000 RUTGER ST
UTICA, NY 13501
SSN: █████████

Agency Debt No.: TRFM1500313503

I hereby certify, as part of my duties with the U.S. Department of the Treasury (Treasury), including referring matters to the U.S. Department of Justice (DOJ) for litigation, I am a custodian of records of certain files sent by the U.S. Small Business Administration (SBA) to Treasury for collection actions. As a custodian of records for Treasury, I have care and custody of records relating to the debts owed by Mirsad Skiljan (DEBTOR) to SBA.

On May 24, 2013, the DEBTOR executed a term note and loan agreement for $46,000.00, with interest accruing at a rate of 6.50%, except as otherwise provided within the Promissory Note with Manufacturers and Traders Trust Company (M&T Bank) (LENDER). Pursuant to Section 7(a) of the Small Business Act as amended, the SBA guarantees 50.00% of this loan.

Thereafter, the LENDER disbursed a total of $46,000.00 of which the DEBTOR made payments totaling $27,656.91. The payments were applied, $23,862.32 to the principal and $3,794.59 to the interest and fees. The DEBTOR became delinquent on the obligation on April 24, 2014 with a principal balance due of $22,137.68, due to the delinquency the SBA had to pay the guaranteed loan and became holder of the Note.

SBA referred the claim to Treasury's Bureau of the Fiscal Service, Debt Management Services (DMS) to collect the delinquent debt on November 24, 2015. Between February 2017 and January 2018, the DEBTOR made payments totaling $3,780.00 in compliance with a repayment agreement he voluntarily entered into. The payments were applied, $457.60 to the principal and $3,322.40 to the interest. The repayment plan was cancelled on February 5, 2018, due to the DEBTOR's default on the agreement.

On October 30, 2019, DMS referred the claim to DOJ for litigation and collection in the amount due of $21,680.08 with daily interest of $3.86. Further, I certify that I am familiar with Treasury's record keeping practices, including the receipt of files from SBA. As of October 30, 2019, the DEBTOR is indebted to the United States in the amounts stated as follows:

| | |
|---|---|
| Principal: | $ 21,680.08 |
| Interest (@6.50%): | $ 2,544.29 |
| Admin Fees: | $ 8,740.75 |
| **Total:** | **$ 32,965.12** |

1



U.S. DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE
WASHINGTON, DC 20227

ACTING ON BEHALF OF
U.S. SMALL BUSINESS ADMINISTRATION
<u>CERTIFICATE OF INDEBTEDNESS</u>

The balances stated in the case listed above are current as of October 30, 2019, including any applicable interest, penalties, administrative fees, and DMS & DOJ fees (pursuant to 31 U.S.C. 3717(e) and 3711(g)(6), (7); 31 C.F.R. 285.12(j) and 31 C.F.R. 901.1(f); and 28 U.S.C. 527, note).

Pursuant to 28 U.S.C. § 1746(2), I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief based upon information provided by DOL and information contained in Treasury's records.

10/30/2019

X _Natalie J. Stubbs_

Signed by: Natalie R. Stubbs
**Natalie Stubbs**
**Financial Program Specialist**
**U.S. Department of the Treasury**
**Bureau of the Fiscal Service**

2

Case No.: 6:20-CV-0109 (DNH/ATB)

JS 44  (Rev. 02/19)

# Civil  Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

John Manfredi

Manfredi Law Group, PLLC

302 East 19th Street, Suite 2A, New York, New York 10003 ph 347 614 7006

## DEFENDANTS

Mirsad Skiljan aka
Mirsad M. Skiljan

County of Residence of First Listed Defendant    Oneida
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

*N/A*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

X 1  U.S. Government
   Plaintiff

2  U.S. Government
   Defendant

3 Federal Question
   *(U.S. Government Not a Party)*

4 Diversity
   *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards Act | **SOCIAL SECURITY** | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 720 Labor/Management Relations | 861 HIA (1395ff) | 480 Consumer Credit |
| X 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 740 Railway Labor Act | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 863 DIWC/DIWW (405(g)) 864 SSID Title XVI | 850 Securities/Commodities/ Exchange |
| 196 Franchise | | | 790 Other Labor Litigation | 865 RSI (405(g)) | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | 891 Agricultural Acts |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | | 870 Taxes (U.S. Plaintiff or Defendant) | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 871 IRS—Third Party 26 USC 7609 | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | | 896 Arbitration |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** 540 Mandamus & Other | 462 Naturalization Application | | |
| | 448 Education | 550 Civil Rights | 465 Other Immigration Actions | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

X 1 Original
   Proceeding

2 Removed from
   State Court

3 Remanded from
   Appellate Court

4 Reinstated or
   Reopened

5 Transferred from
   Another District
   *(specify)*

6 Multidistrict
   Litigation

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $32965.12

CHECK YES only if demanded in complaint:
**JURY DEMAND:**        No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____        DOCKET NUMBER _____

DATE  February 2, 2020                    SIGNATURE OF ATTORNEY OF RECORD  */s/ John Manfredi*

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT  Waived | APPLYING IFP | JUDGE  DNH | MAG. JUDGE  ATB |
|---|---|---|---|---|

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdiction be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.